UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN KURELKO,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT A. BALLARD, *et al.*,<br><br>Defendants. | Civ. No. 25-11917 (ZNQ)(JBD)<br><br>**MEMORANDUM ORDER** |

Plaintiff Steven Kurelko, proceeding *pro se*, has filed two motions to disqualify the New Jersey Office of the Attorney General ("NJOAG") from representing the following defendants (collectively, the "Judiciary Defendants"): the Honorable Robert A. Ballard, Jr., P.J. Civ. ("Judge Ballard"), the Honorable Wendy A. Reek, J.S.C. ("Judge Reek"), and the Honorable Michael V. Cresitello, Jr., A.J.S.C. ("Judge Cresitello"). [Dkts. 15, 46.] For the reasons set forth below, plaintiff's motions to disqualify are DENIED.

## I. BACKGROUND

Plaintiff initiated this lawsuit on June 17, 2025. [Dkt. 1.] The action stems from a state court proceeding in the Superior Court of New Jersey. *See generally* [Dkt. 54]. Relevant here, on February 24, 2025, Judge Reek—who was presiding over the state court case at the time—imposed a filing restriction on plaintiff that required him to seek leave of court before filing any additional motions in that case. *Id.* at 21-24. In this action, plaintiff challenges the constitutionality of that filing

restriction and its enforcement by the Judiciary Defendants, as well as the invocation of the restriction by other defendants. *See generally id.*[1]

On July 8, 2025, the NJOAG entered an appearance on behalf of Judge Ballard in this action. [Dkt. 13.] Later that day, plaintiff filed his first motion to disqualify the NJOAG as counsel for Judge Ballard. [Dkt. 15.] While that motion was pending, the NJOAG entered appearances on behalf of Judge Reek and Judge Cresitello. [Dkts. 16, 26.] The NJOAG also filed a brief in opposition to plaintiff's motion to disqualify. [Dkt. 30.]

Shortly thereafter, on August 5, 2025, plaintiff filed another action in this Court against Judge Ballard, then-Attorney General Matthew Platkin, and several John and Jane Does. *Kurelko v. Platkin*, Civ. No. 25-14114, [Dkt. 1]. Plaintiff amended his complaint twice in that action, and named Judge Reek and Judge Cresitello as defendants as well. *Id.*, [Dkt. 15]. In this second federal case, plaintiff brought an as-applied challenge to a provision of the New Jersey Tort Claims Act

---

[1] In his original complaint, plaintiff also named the Attorney General as a defendant and alleged, *inter alia,* that "the State of New Jersey, through its Rules of Court and the Attorney General's ongoing defense of their constitutionality, has created and maintained a system that permits the denial of judicial access without notice, standards, findings, or remedy." [Dkt. 1] at 2-3. In his amended complaint, plaintiff removed the Attorney General as a defendant and narrowed his claims to focus this litigation on the alleged conduct of the Judiciary Defendants and other private litigants in the state court proceedings. *See* [Dkt. 54]. Because the Attorney General is no longer a defendant in this action, the Court does not address here any aspect of plaintiff's first motion to disqualify the NJOAG on the basis that the Attorney General formerly was a defendant in the suit. Separately, the Court notes that plaintiff has sued the Honorable Kevin M. Shanahan, A.J.S.C. ("Judge Shanahan") in his amended complaint. *Id.* The docket reflects that Judge Shanahan has not yet been served, and no attorney has entered an appearance on Judge Shanahan's behalf.

("TCA"), N.J.S.A. § 59:10A, based on the NJOAG's decision to represent the Judiciary Defendants in connection with plaintiff's first federal action, and he alleged that the Judiciary Defendants' continued control over his state court proceedings during the pendency of his federal litigations is unconstitutional. *Id.* at 38-188. Additionally, plaintiff asserted a facial challenge to N.J.S.A. § 59:10A on the grounds that it authorizes the NJOAG to represent sitting judges "without standards, safeguards, or any reviewable record"; and that § 59:10A "delegates discretion in a way that invites arbitrary application [], erodes the guarantee of a neutral and impartial tribunal . . . and omits threshold procedures where the risk of error is intolerable," thereby raising separation-of-powers concerns. *Id.* at 9-10; *see also id.* at 188-231. The NJOAG also represented the New Jersey Attorney General and the Judiciary Defendants in plaintiff's second federal action. *Id.*, [Dkts. 6, 18].

On January 23, 2026, the Judicial Defendants and the NJOAG moved to dismiss plaintiff's complaint in the second federal action. Civ. No. 25-14114, [Dkt. 21]. In lieu of an opposition brief, plaintiff filed a motion for leave to file an amended complaint, in which he reasserted many of the same allegations in his first amended complaint, but proposed five causes of action instead of his original three. *Id.,* [Dkt. 24]; *see also id.*, [Dkt. 27] at 3-4 (summarizing plaintiff's proposed second amended complaint). On August 21, 2026, the Court issued an Opinion and Order granting defendants' motion to dismiss and denying plaintiff's motion for leave to

amend. *Id.*, [Dkts. 27, 28]. The Court directed the Clerk to mark that case closed. [Dkt. 28.]

After plaintiff filed his second federal action but before the Court dismissed the complaint in that case, plaintiff requested leave in this case to withdraw his first motion to disqualify and to "file a renewed motion . . . incorporating the original bases together with newly arisen facts and [ ] additional supporting authority." [Dkt. 35.] The Court denied the request to withdraw the motion to disqualify "simply to enable [plaintiff] to re-file it with recent developments," but permitted plaintiff "to incorporate any recent facts/developments in a reply brief." [Dkt. 36.] Despite that directive, on November 5, 2025, plaintiff filed a second motion to disqualify the NJOAG as counsel for all of the Judiciary Defendants. [Dkt. 46.] In that motion, plaintiff alternatively requests that the Court stay this action pending resolution of his second federal action, "or until the identified conflict conditions are eliminated." [Dkt. 46-2] at 17.

The Court originally terminated plaintiff's second motion because he already filed a motion to disqualify, [Dkt. 52], but later changed course and decided to consider all briefing filed in connection with plaintiff's disqualification motions. [Dkt. 59.] The Court also permitted plaintiff and the Judiciary Defendants to file a supplemental opposition and reply. *Id.*; [Dkts. 66, 67].

## II. LEGAL STANDARDS

The Court's "power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). "As a general rule, the exercise of this authority is committed to the sound discretion of the district court . . . ." *Id.* When considering a motion to disqualify counsel, this court is guided by Local Civil Rule 103.1(a), which establishes that attorney professional ethics and responsibility standards in the District Court of New Jersey are governed by the Rules of Professional Conduct as revised by the New Jersey Supreme Court. L. Civ. R. 103.1(a); *see also Residences at Bay Point Condo. Assoc., Inc v. Chernoff Diamond & Co., LLC*, Civ. No. 16-5190 (MAH), 2017 WL 3531683, at *3 (D.N.J. Aug. 17, 2017) (stating that "issues of professional ethics in the District Court of New Jersey are governed by L. Civ. R. 103.1(a).").

The movant bears the burden of establishing that disqualification is appropriate. *Kaselaan & D'Angelo Associates, Inc v. D'Angelo*, 144 F.R.D. 235, 238 (D.N.J. 1992). "Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer [or law firm] is disqualified." *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993)). This is because courts disfavor disqualification, viewing it as a "drastic measure which courts should hesitate to impose except when absolutely necessary."

*Shaikh v. Germadnig*, Civ. No. 22-2053 (RLS), 2022 WL 16716116, at *3 (D.N.J. Nov. 4, 2022) (quoting *Carlyle Towers*, 944 F. Supp. at 345).

Indeed, courts recognize that disqualification motions can be used for "tactical reasons" and they "inevitably cause delay" in the proceedings. *Carlyle Towers*, 944 F. Supp. at 345 (citation omitted). Furthermore, a party's selection of counsel is afforded "substantial deference." *Rohm and Haas Co. v. American Cyanamid Co.*, 187 F. Supp. 2nd 221, 227 (D.N.J. 2001) (citations omitted). "When determining whether to disqualify counsel[,] the Court must closely and carefully scrutinize the facts to prevent unjust results." *Martin v. AtlantiCare*, Civ. No. 10-6793 (JS), 2011 WL 5080255, at *2 (D.N.J. Oct. 25, 2011); *see also Steel v. Gen. Motors Corp.,* 912 F. Supp. 724, 733 (D.N.J. 1995) (adjudicating motions to disqualify "involves a painstaking analysis of the facts and precise application of precedent." (citations omitted)), *aff'd sub nom. Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968 (D.N.J. 1996).

Relevant to the present motions to disqualify, the NJOAG's authority to represent state officials in litigation derives from two sources: the Department of Law and Public Safety Act of 1944 ("DLPSA") and the TCA. The DLPSA authorizes the NJOAG to "act as the sole legal advisor, attorney or counsel . . . for all officers, departments, boards, bodies, commissions and instrumentalities of the State Government." N.J.S.A. § 52:17A-4. The TCA provides that, when a state officer or employee is subject to a tort action, the NJOAG shall provide for the defense of that officer or employee "on account of an [alleged] act or omission in the scope of his

employment." N.J.S.A. § 59:10A-1. The TCA permits the NJOAG to refuse to provide for the defense of an officer or employee if: (a) "the act or omission was not within the scope of employment;" (b) "the act or failure to act was because of actual fraud, willful misconduct or actual malice;" or (c) "the defense of the action or proceeding by the Attorney General would create a conflict of interest between the State and the employee or former employee." N.J.S.A. § 59:10A-2.

Pursuant to the TCA, the NJOAG must defend a state officer or employee unless the NJOAG "determines that it is more probable than not that" one of the aforementioned exceptions applies. *Prado v. State*, 186 N.J. 413, 427 (2006). This Court generally defers to the NJOAG's discretion in considering whether an exception applies, unless there is evidence to support an incurable conflict-of-interest. *See, e.g., Aruanno v. Booker*, Civ. No. 08-305 (JLL), 2009 WL 1173438, at *2 (D.N.J. Apr. 29, 2009) (denying plaintiff's motion to disqualify, explaining that the "court [wa]s in no position to question" the Attorney General's decision to defend a state employee), *aff'd*, 384 F. App'x 69 (3d Cir. 2010). Courts therefore are especially reluctant to grant a motion to disqualify when the NJOAG is representing defendants pursuant to the TCA. *Marchisotto v. Malik*, Civ. No. 20-20426 (JRS), 2024 WL 1929504, at *2 (D.N.J. May 2, 2024).

## III. DISCUSSION

Plaintiff's motions to disqualify the NJOAG from representing the Judiciary Defendants rest on three principal arguments.[2] First, plaintiff argues that the NJOAG's representation of the Judiciary Defendants in this case violates New Jersey Rules of Professional Conduct ("RPC") 1.7(a) and 1.13 because the NJOAG will be "materially limited" by its simultaneous defense of the constitutionality of N.J.S.A § 59:10A in Civil Action No. 25-14114. [Dkt. 46-2] at 8-12. More specifically, plaintiff argues that the state and/or public interest was the NJOAG's true client in Civil Action No. 25-14114, and that the Judiciary Defendants' interests in this case diverge from the public interest because the NJOAG's defense of judicial officials destroys the appearance of a neutral judiciary. *Id.* Second, plaintiff contends that the NJOAG's representation of the Judiciary Defendants in this action while simultaneously defending that representation framework in his second federal action "invites a reasonable observer to question whether advocacy interests are interlaced with adjudicative functions," which destroys the appearance of impartial justice and implicates separation of powers concerns. *Id.* at 14-15. Third, plaintiff argues that the NJOAG must decline representation of the Judiciary Defendants pursuant to the TCA's exceptions. *Id.* at 13-14.

---

[2] Plaintiff's theories of relief are, at times, confusing and not clearly articulated. To the extent the Court has not specifically addressed a particular point, it is because it was not sufficiently developed in plaintiff's submissions and otherwise lacks merit.

Plaintiff's arguments are unpersuasive and do not meet his high burden of demonstrating that disqualification is warranted. Plaintiff's motions to disqualify are therefore denied.

*

At the outset, the central premise of plaintiff's motions to disqualify in this case depend largely on the pendency of plaintiff's claims in the second federal action, Civil Action No. 25-14114. Because the Court recently dismissed the complaint in that case without leave to amend and closed the case, the main basis for plaintiff's motions to disqualify no longer exists. In any event, plaintiff's motions to disqualify fail on their own terms and do not meet the high burden of demonstrating that disqualification is warranted here.

First, plaintiff does not sufficiently explain why the NJOAG's defense of N.J.S.A § 59:10A-2 in Civil Action No. 25-14114 creates a conflict of interest under any of the RPCs, including RPC 1.7(a)[3] and RPC 1.13,[4] or how it otherwise impedes

---

[3] RPC 1.7(a) provides in relevant part that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which arises if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one of more clients will be materially limited by the lawyer's responsibilities to another client . . . ."

[4] RPC 1.13 provides, in pertinent part, that "a lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents." RPC 1.13(a). The Rule further provides that if a lawyer representing an organization "knows that an officer, employee or other person associated with the organization" violates "a legal obligation to the organization, or a . . . law which reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization." RPC 1.13(b). Additionally, "[a] lawyer representing an organization

the NJOAG's ability to advocate zealously on behalf of the Judiciary Defendants in this action. Instead, plaintiff offers only general and vague assertions—without compelling authority[5] or examples—that the NJOAG has a conflict of interest by representing the Judiciary Defendants here. Plaintiff asserts in a conclusory manner that the NJOAG's representation of the Judiciary Defendants in this action while simultaneously defending N.J.S.A. § 59:10A—the statute authorizing that representation—in his second federal action creates a concurrent conflict of interest and materially limits its defense. This is so, according to plaintiff, because the NJOAG must simultaneously represent the State's institutional interest in maintaining the appearance and reality of a neutral judiciary and the Judiciary Defendants' personal interests which, plaintiff asserts, requires them to defend the Judiciary Defendants' alleged unconstitutional conduct that he believes evinces a lack of judicial neutrality. [Dkt. 46-2] at 8-12. Conclusory assertions do not suffice: Plaintiff fails to explain how the NJOAG's representation of the Judiciary

---

may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of RPC 1.7." RPC 1.13(e).

[5] Plaintiff's first motion to disqualify contains several inaccurate or non-existent case citations and quotations. *See* [Dkt. 15.] "'[I]t is improper and unacceptable for litigants—including *pro se* litigants—to submit 'non-existent judicial opinions with fake quotes and citations.'" *Fagan v. Barnhiser*, Civ. No. 24-06012 (CCC), 2025 WL 2654994, at *2 (D.N.J. Sept. 17, 2025) (quoting *Anonymous v. New York City Dep't of Educ.*, Civ. No. 24-4232, 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024) (further citations omitted)). "While some Courts have opted to sanction *pro se* litigants for this conduct, others have chosen to warn, rather than sanction, in these situations." *Id.* (citation omitted). At this time, the Court will not impose sanctions. But plaintiff is now on notice: The Court "admonishes [p]laintiff for his improper conduct and warns that he will be subject to sanctions, including monetary penalties, should he [engage in similar conduct] again in the future." *Id.*

Defendants will be "materially limited" within the meaning of the RPCs or otherwise. The total lack of substance to plaintiff's motions is apparent; disqualification is an extreme measure, and movants must carry a heavy burden to prove why disqualification is necessary. *Shaikh*, 2022 WL 16716116, at *3. Plaintiff has not done so here.

In truth, NJOAG's defense of the statute in the second federal action authorizing it to appear on behalf of the Judiciary Defendants in the two federal proceedings will not materially limit the defense of its clients in either case. The defense of N.J.S.A. § 52:17A's constitutionality in the second federal action does not require the NJOAG to assert that the Judiciary Defendants acted extra-judiciously, unlawfully, not impartially, or unconstitutionally toward plaintiff, or to take any position inconsistent with the Judiciary Defendants' interests here. To the contrary, the NJOAG's defense of N.J.S.A. § 59:10A in the second action is fully aligned with the interests of the Judiciary Defendants in this case: The statute provides judicial officers, like other state employees, a legal defense when they face suit arising from their public employment. *See* N.J.S.A. § 59:10A-1. The Court accordingly rejects plaintiff's conclusory assertions that the NJOAG faces a conflict of interest and that it will be materially limited in its representation of the Judiciary Defendants. *See Ramirez v. Harper*, Civ. No. 22-04986 (ESK), 2023 WL 4492384, at *3 (D.N.J. June 26, 2023) ("There is not necessarily a conflict of interest when the NJOAG represents a state agency and that agency' employees in separate related matters.").

Second, the Court rejects plaintiff's argument that allowing the NJOAG to defend the Judiciary Defendants will destroy the appearance and function of a neutral judiciary. [Dkt. 46-2] at 14-15. The NJOAG is a component of the State's executive branch and promulgates and enforces the Executive's directives. N.J.S.A. § 52:17B-1. The NJOAG is not a component of the State's judicial branch and is constitutionally prohibited from promulgating or enforcing judicial powers. *See* N.J. Const. art. III, ¶ 1 (establishing that a member of one governmental branch is prohibited from exercising the powers assigned to another branch); N.J. Const. art. VI, § 1, ¶ 1 (establishing that "judicial power shall be vested in a Supreme Court, a Superior Court, and other courts of limited jurisdiction."). Because the NJOAG has no authority to exercise the judicial power, there is no risk that the NJOAG's representation of the Judiciary Defendants in this case will compromise the judiciary's neutrality or independence. *See* N.J.S.A. § 52:17B-1 (creating the Department of Law and Public Safety under the Executive Branch); N.J. Const. art. III, ¶ 1 (separating governmental powers between the legislature, executive, and judiciary and mandating that "[n]o person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution."); N.J. Const. art. VI, § 2, ¶ 3 ("The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts."). While it is of course true that a neutral judiciary is fundamental, the NJOAG's representation of a judicial officer pursuant to a statute in no way

jeopardizes the judiciary's neutrality. Plaintiff cites no authority supporting his request to disqualify the NJOAG for this reason, and the Court has found none.

Third, plaintiff misunderstands the TCA. The statute grants the NJOAG discretion to accept or decline representation of state officials if it believes an exception applies. N.J.S.A. § 59:10A-2; *Prado*, 186 N.J. at 426-27 (noting the burden is on the Attorney General to justify a denial of representation); *El Mujaddid v. Wehling*, Civ. No. 25-738 (EAP), 2026 WL 594048, at *7 (D.N.J. Mar. 3, 2026) (holding that the "[p]laintiff lack[ed] standing to challenge the Attorney General's decision to represent [a county detective]."). Indeed, "the Attorney General *must* provide a defense for a state employee who requests representation, unless the Attorney General determines that it is more probable than not" that an enumerated exception applies. *Prado*, 186 N.J. at 428 (citing N.J.S.A. 59:10A-2); *see also Aruanno*, 2009 WL 1173438, at *2; *El Mujaddid*, 2026 WL 594048, at *7 ("N.J.S.A. 59:10A-2 does not 'prohibit' the NJOAG from representing a state employee *accused* of misconduct." (emphasis in original)). Given plaintiff's failure to identify an actual, potential, or even conceivable conflict of interest, the Court will not second-guess the NJOAG's decision to represent the Judiciary Defendants in this case.

## IV. CONCLUSION

For the reasons stated,

**IT IS** on this **25th** day of **August, 2026**,

**ORDERED** that plaintiff's motions to disqualify [Dkts. 15, 46] are **DENIED**; and it is further

**ORDERED** that in light of the Court's recent Opinion and Order dismissing the complaint in Civil Action No. 25-14115 without leave to amend, plaintiff's request to stay this action pending the resolution of Civil Action No. 25-14115 is **DENIED**.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE